UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GRESHAM,

        Plaintiff,

                                CASE No. 1:23-CV-1053

v.

                                HON. ROBERT J. JONKER

MICHAEL TAYLOR, et al.,

        Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Green's Report and Recommendation (ECF No.

73) and Plaintiff's Objection to the Report and Recommendation (ECF No. 74).   Under the

Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and

Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's

recommendation unless, on de novo reconsideration, he or she finds it justified."   12 WRIGHT,

MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).

Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate
> judge's disposition that has been properly objected to.   The district
> judge may accept, reject, or modify the recommended disposition;
> receive further evidence; or return the matter to the magistrate judge
> with instructions.

FED R. CIV. P. 72(b)(3).   De novo review in these circumstances requires at least a review of the

evidence before the Magistrate Judge.   *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the

Report and Recommendation itself; Plaintiff's objections; and Defendant Taylor's response to the

objections.    The Court agrees, for the very reasons set out by the Magistrate Judge, that Plaintiff's motion for a TRO must be denied.    The Court also agrees with the Magistrate Judge's ultimate conclusion that the defense is entitled to summary judgment.    Plaintiff's objections raise a question about the summary judgment record and require a more detailed discussion.

### 1.  The Basic Claims of the Parties

Plaintiff and Defendant Taylor have vastly different theories of the case.    The ultimate question, discussed in the next sections, is whether there is enough admissible evidence of record to create a triable issue of fact.    Here, however, the Court simply summarizes the competing contentions.

Plaintiff posits that he is a well-known prisoner in the MDOC system.    He has filed dozens of grievances and lawsuits against MDOC officers, and he contends that corrections officers are motivated to retaliate against him for filing those grievances.    These officers, including Defendant Taylor, have labeled him a "snitch" and refer to him as such to other inmates.    As set out in his Complaint, Plaintiff says that Defendant Taylor found an opportunity to retaliate against him on July 28, 2023, while he was away from his cell to take a shower.    When Plaintiff returned to his cell, he discovered that someone had gone through his materials and that three books and some of his legal papers had been removed from his cell.    Prisoner Whittaker told him that Defendant Taylor had been the one to go through his cell.    Later that same day Plaintiff came across Prisoner Tittle in possession of one of his books.    Prisoner Tittle told Plaintiff that Defendant Taylor had paid Tittle with Plaintiff's property to have either Tittle or Tittle's fellow gang members assault Plaintiff.    Plaintiff tried to get his property back from Defendant Taylor, but Taylor labeled him a snitch and said, "that's payback for writing all those grievances and

2

lawsuits."    Later that fall (Plaintiff is not sure, but he surmises it was October) Plaintiff was taking a shower when a prisoner reached down under the shower partition, stabbed Plaintiff in the foot, and made a comment that expressly linked the assault to Defendant Taylor.    Defendant Taylor also subsequently told Plaintiff "That's what you get" in reference to the stabbing.    Plaintiff did not receive medical treatment, but he says that his kites requesting treatment were misdirected.

Defendant Taylor's declaration provides a different version of events.[1]  He maintains he never called Plaintiff a snitch and understands a prisoner's constitutional right to file grievances. While he acknowledges he went into Plaintiff's cell on July 28, 2023, he says he did so because Prisoner Tittle asked him to retrieve a book belonging to him that was inside Plaintiff's cell. Defendant Taylor says he performed a search of the cell and located the book Tittle asked for. Before giving the book to Prisoner Tittle, Defendant Taylor saw that the book bore Tittle's name and MDOC number.    After he was satisfied the item belonged to Tittle, Defendant Taylor took the book across and hall and gave it to him.    Defendant Taylor denies destroying or taking any other property from Plaintiff's cell.    He further disputes everything that Plaintiff says followed

---

[1] The defense also says that Plaintiff's version of events has shifted during the litigation, and in particular that Plaintiff's subsequent deposition testimony differed in several material respects from the allegations in his Complaint.    When Plaintiff confronted Defendant Taylor over the alleged theft of his property, for example, Plaintiff testified that Defendant Taylor "ignored me" (ECF No. 50-3, PageID.446) rather than what Plaintiff had alleged in his Complaint—that Defendant Taylor tacitly acknowledged taking Plaintiff's property and ordering a hit on Plaintiff and told Plaintiff he had done so because he was a snitch.    Likewise, Plaintiff testified that when he was assaulted in the shower, the other inmate did not say anything (ECF No. 50-3, PageID.448) rather than what he had alleged in his Complaint—that the inmate expressly linked the assault to Defendant Taylor.    To the extent these allegations differ from his subsequent deposition testimony, Plaintiff blames the passage of time; the stress of maintaining the several lawsuits he has filed in this district; misconduct of MDOC staff (including what he says is a decision to medicate him against his will); and food poisoning.

after that.    Defendant Taylor says he did not make the statement Plaintiff claims he made when Plaintiff approached him after the cell search; that he never paid any inmate to attack Plaintiff or otherwise placed a hit on him; that he had no knowledge that Plaintiff had been assaulted or stabbed in the shower; and that he did not make a comment after the assault suggesting to Plaintiff "that's what you get."

    *2.   Verification of Plaintiff's Complaint*

Plaintiff's objections depend in large part on the allegations in his Complaint. Accordingly, as a threshold issue the Court must determine whether Plaintiff's Complaint is properly a part of the summary judgment record.    For the reasons set out below, the Court determines it is not.

It is well established that only admissible evidence may be considered in ruling on a motion for summary judgment. *See Rogers v. Lilly,* 292 F. App'x 423, 428 n.3 (6th Cir., Aug. 22, 2008). And so a party may not merely depend on the allegations in the complaint to defeat a defense motion for summary judgment.    *Tullis v. UMB Bank, N.A.*, 423 F. App'x 567, 570 (6th Cir. 2011). Verified complaints, which are considered a type of affidavit, are admissible evidence that may be considered.    To be admissible in a summary judgment proceeding an affidavit must either: (a) be "sworn to before an officer authorized to administer an oath, such as a notary public, or (b) be "an unsworn declaration which is dated and signed by the declarant" and "subjects the declarant to penalties of perjury." *Trapaga v. Central States Joint Board Local 10,* 2007 WL 1017855 at *2 (N.D.Ill., Mar.30, 2007); *see also, McConnell v. Ritz–Carlton Watertower,* 39 Fed. Appx. 417, 420 (7th Cir., June 5, 2002); *Howell v. New Mexico Department of Aging & Long Term Services,* 2010 WL 3965927 at *4 (10th Cir., Oct.12, 2010).    Plaintiff's Complaint was not sworn, but he

4

says he has properly verified it consistent with 28 U.S.C. § 1746 such that it may be considered as part of the summary judgment record.    The Court disagrees.

Affidavits may be submitted in support of or opposition to a motion for summary judgment. *See* FED. R. CIV. P. 56(c).   And a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *American Civil Liberties Union of Kentucky v. Grayson County,* 591 F.3d 837, 844 n.2 (6th Cir. 2010).   For an unsworn statement to be admissible in a summary judgment proceeding, it must be executed "in substantially the following form . . . I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746.   "Under that statute, [plaintiff] must, at the very least, (1) sign the declaration, (2) declare its contents as true, (3) swear under the penalty of perjury, and (4) provide a date." *Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 781 (6th Cir. 2024), *reh'g denied sub nom. Mllczak v. Gen. Motors, LLC*, No. 23-1462, 2024 WL 3205990 (6th Cir. June 17, 2024).   A declaration that does not substantially meet the requirements of Section 1746 may not be relied upon for purposes of responding to a motion for summary judgment.

The Complaint in this case does not constitute a "verified" complaint because it does not substantially comply with Section 1746.   Plaintiff's purported verification statement cites to the statute and is signed and dated.   It then reads "I declare all is true without perjury."   (ECF No. 1, PageID.7).   The Court concludes this is not enough to substantially comply with the statute because the phrase "without perjury" is not similar enough to a statement acknowledging the penalty component.   For instance, the phrase can either be read as redundant to the earlier statement declaring the contents as true, or as a qualification that expressly carves out any potential perjury exposure.   The phrase does not sufficiently acknowledge the separate component that the

statements are made under penalty of perjury, and thus Plaintiff's Complaint does not qualify as a "verified" complaint for purposes of summary judgment.

### 3.  Magistrate Judge's Conclusion

The Court agrees with the Magistrate Judge that the summary judgment record in this case does not create a triable issue on either the First Amendment retaliation or the Eighth Amendment claims.

Viewing all inferences in Plaintiff's favor, the summary judgment record of admissible evidence would permit a reasonable jury to find that Plaintiff has a reputation for filing grievances against MDOC officials.  This agitated MDOC officers, including Defendant Taylor, and they began referring to Plaintiff as a "snitch."  On July 28, 2023, Plaintiff returned to his cell to discover that someone had gone through his cell and some of his property—including books and legal documents—was missing.   Later that day Plaintiff says he saw inmate Tittle with one of the books that Defendant Taylor had removed from his cell.   Plaintiff asked Defendant Taylor about the books.[2]   When he did so, however, Defendant Taylor simply ignored him.   At some unspecified time several months later—Plaintiff speculates perhaps sometime in October—

---

[2] Plaintiff says he approached Defendant Taylor because inmate Whittaker told him it was Defendant Taylor who removed the materials, and because inmate Tittle told him Defendant Taylor gave him one of the books, asking in return that Tittle assault Plaintiff.   These statements are hearsay to the extent they are offered for the truth of the assertions. But they do explain why Plaintiff approached Defendant Taylor.   Notably, none of the other materials submitted by Plaintiff—including an affidavit of Prisoner Whittaker—provide that first-hand knowledge of matters asserted.   Plaintiff asserts in a conclusory manner that these witnesses would testify to these events if called at trial and that they were reluctant to include these events in their affidavits out of a fear of retaliation.   But Plaintiff's unsworn assertion about the affiants' motives and further speculation about what they might say if called at trial is not enough to create an issue of fact for trial.   The Court also notes that several of Plaintiff's affidavits suffer from the same deficiency as Plaintiff's Complaint because they contain similar "without perjury" phrasing.

Plaintiff was taking a shower when another prisoner (perhaps Tittle) reached down between a partition and stabbed Plaintiff in the foot.   The assailant did not say anything, but Plaintiff testified Defendant Taylor was working that day, and he told Plaintiff, "That's what I [meaning Plaintiff] get."   Plaintiff says he submitted medical kites for treatment in the ensuing days, but they were ignored.

This is insufficient to create a fact issue for trial.   Plaintiff has no first-hand basis for his belief that Defendant Taylor took his personal property from his cell, let alone for his contention that Defendant Taylor gave his property to another inmate as advanced payment for an assault on Plaintiff.   Video surveillance does show Defendant Taylor enter and leave Plaintiff's cell on July 28, 2023.   But it shows Defendant Taylor leaving with only one book.   And the unrebutted evidence is that the book belonged to Inmate Tittle, which is why Defendant Taylor says he gave it to him.   Nor is there any evidentiary support to Plaintiff's attempt to link the search of his cell to the assault three months later.   Nor is there any record of treatment for a foot wound on Plaintiff.[3]

Indeed, an Eighth Amendment claim has both an objective and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Id.* at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).   The subjective component asks "whether force was applied in a good-faith effort to maintain or restore discipline,

---

[3] In fact, Plaintiff has told two different versions of where he was wounded.

or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).   No reasonable jury could conclude that Defendant Taylor maliciously and sadistically caused harm to Plaintiff.   The cryptic, post-hoc comment Plaintiff says Defendant Taylor made does nothing to link him to the shower assault.   Indeed, it is undisputed that Plaintiff never told Taylor that he felt threatened.   (Gresham Dep. 69, ECF No. 50-3, PageID.442).   This dooms his retaliation and Eighth Amendment claims.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 73) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 49) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Temporary Restraining Order (ECF No. 55) is **DENIED.**

A separate Judgment shall issue.

Dated:   March 18, 2026                     /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            UNITED STATES DISTRICT JUDGE

8